Filed 8/11/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LYNETTE SIMERLEY et al.,<br><br>        Plaintiffs and Appellants,<br>v.<br><br>GOLDEN GATE BRIDGE HIGHWAY AND TRANSPORTATION DISTRICT,<br><br>        Defendant and Respondent. | A173588<br><br>(City & County of San Francisco Super. Ct. No. CGC25622935) |

Tracy Simerley and his wife, Lynette Simerley,[1] sued Golden Gate Bridge Highway and Transportation District (District) for injuries Tracy sustained while working as a seaman on a ferryboat owned by the District. Lynette appeals from the trial court's decision to grant the District's demurrer to her loss of consortium claim on the ground that loss of consortium is unavailable under general maritime law or the Jones Act (46 U.S.C.A. § 30104). We affirm.

## I. BACKGROUND

It is undisputed that federal maritime law governs the issue presented in this appeal. Historically, federal courts have developed an " ' "amalgam of traditional common-law rules, modifications of those rules, and newly created rules" that forms the general maritime law.' " (*The Dutra Grp. v. Batterton*

---

[1] For clarity's sake, we will refer to the individual Simerleys by their first names. We mean no disrespect in doing so.

1

(2019) 588 U.S. 358, 360–361 (*Batterton*).) Beginning in the 20th century, however, Congress began enacting federal maritime statutes to provide greater protection for seamen. These statutes included the Jones Act, which was enacted in 1920 and created a statutory cause of action for seamen to sue their employers for negligence. (*Batterton*, at p. 366; *Atlantic Sounding v. Townsend* (2009) 557 U.S. 404, 415 (*Townsend*).) The Jones Act did not expressly eliminate the causes of action or remedies that existed under general maritime law prior to its enactment, such as claims for personal injury "unseaworthiness." (*Townsend*, at pp. 415–416; *Batterton*, at p. 362.) But because an admiralty court "is not free to go beyond" the limits set by Congress, questions arose about the types of relief available to maritime plaintiffs under general maritime law. (*Miles v. Apex Marine Corp.* (1990) 498 U.S. 19, 24 (*Miles*).)

In a trio of cases—*Miles*, *Townsend*, and *Batterton*—the United States Supreme Court addressed the issue of whether a plaintiff's requested relief was available under general maritime law in light of these legislative enactments. (*Miles*, *supra*, 498 U.S. at pp. 27, 32–33; *Townsend*, *supra*, 557 U.S. at p. 407; *Batterton*, *supra*, 588 U.S. at pp. 360–361.) This case presents a similar question.

Lynette and Tracy initiated this action by filing a complaint against the District in March 2025. The complaint alleged the District employed Tracy as a "seaman" within the meaning of the Jones Act.[2] As alleged in the

_____

[2] The complaint also alleged that Tracy was " 'a member of a crew' within the meaning of" the Longshore and Harbor Workers' Compensation Act (LHWCA). (33 U.S.C.A. § 902(3)(G).) "The LHWCA provides benefits for all marine workers except a master or 'a member of a crew of any vessel.' The Jones Act provides coverage for 'seamen.' It is firmly established that the terms are interchangeable and that the criteria for establishing each are

2

complaint, Lynette's claim for loss of consortium was based on the second cause of action for "[u]nseaworthiness," which alleged the vessel and its gear, crew, and equipment were "unsafe, unseaworthy, and unfit[,]" resulting in injuries to Tracy. The complaint also asserted causes of action for negligence under the Jones Act and for "[m]aintenance, [f]ound, and [c]ure."

The District demurred to the loss of consortium claim. Citing *Miles*, *supra*, 498 U.S. 19, the District argued that the Jones Act did not permit recovery of non-pecuniary damages, which would include loss of consortium. It further contended that under *Batterton*, *supra*, 588 U.S. 358, loss of consortium claims were not legally available to spouses of injured seamen under the Jones Act or general maritime law. The Simerleys opposed the demurrer, contending general maritime law gave Lynette a common law remedy for loss of consortium, and the Jones Act did not foreclose such a remedy for spouses of injured seamen. They claimed the Supreme Court's decision in *Townsend*, *supra*, 557 U.S. 404 "make[s] clear" that *Miles* and the other authority relied on by the District do not support the District's position. They further argued that *Batterton* was "neither on point nor instructive."

The trial court sustained the demurrer without leave to amend. The court first concluded there was no loss of consortium recovery under the Jones Act. Then, applying the "framework" established in *Batterton*, the

---

the same." (*White v. Valley Line Co.* (5th Cir. 1984) 736 F.2d 304, 305, fn. 2.) Thus, as alleged in the complaint, Tracy is a seaman covered by the Jones Act and not a maritime worker covered by the LHWCA. (See *Harbor Tug & Barge Co. v. Papai* (1997) 520 U.S. 548, 553 ["the LHWCA and the Jones Act are 'mutually exclusive'"].) Lynette does not allege otherwise. This distinction is important because, as we will explain, Lynette relies on authority that the Supreme Court has found applicable only to longshoremen.

court concluded there was no remedy for loss of consortium for claims of unseaworthiness under general maritime law.

## II. DISCUSSION

### A. *Standard of Review and Appealability*

We review an order sustaining a demurrer de novo, exercising our independent judgment on whether the complaint states a cause of action as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) In determining whether the complaint, liberally construed, states facts entitling the plaintiff to relief, we assume the truth of all material properly pleaded facts, without crediting contentions, deductions, or legal conclusions. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We must affirm if the complaint is insufficient on any ground specified in the demurrer. (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439–440.) Lynette has the burden on appeal to demonstrate the trial court erred in sustaining the demurrer. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)

Lynette prematurely appealed from the order sustaining the demurrer without leave to amend, rather than from a judgment of dismissal. (See *Estate of Dito* (2011) 198 Cal.App.4th 791, 799 [an order sustaining a demurrer without leave to amend is not itself an appealable order, but an appeal may be taken from the subsequent judgment or order of dismissal].) Nevertheless, where the trial court's ruling effectively disposed of the action, the respondent does not challenge the appealability of the order, and the appeal has been fully briefed, we may, in the interests of judicial economy, treat the appeal as taken from a judgment of dismissal. (*Id.* at pp. 799–800; *Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 571.) That is the case

4

here.  Accordingly, we will amend the order to make it an appealable judgment of dismissal.  (*Estate of Dito*, at pp. 799–800.)

### B. Analysis

Focusing on whether loss of consortium is available under general maritime law, Lynette contends the dispositive question on appeal is whether Congress intended the Jones Act to abrogate the common law tort remedy for loss of consortium.  She answers this question in the negative, relying on cases that were decided before *Miles*, *Townsend*, and *Batterton*, and she further argues her loss of consortium claim satisfies the "straightforward rule" established by the Supreme Court in *Townsend*.  Lynette's contention fails under *Batterton*, which was decided after *Townsend* and clarified the test for determining whether the relief requested by the plaintiff is available under general maritime law.  As we will explain, *Batterton* requires us to determine whether the requested relief has traditionally been available for the "particular claims involved."  (*Batterton*, *supra*, 588 U.S. at p. 361.)  Although Lynette appears to challenge *Batterton*'s reasoning and suggests *Townsend* does not require her "to demonstrate that [her husband's] unseaworthiness claim and the consortium remedy were historically used in tandem," this court is bound by the reasoning of *Batterton*.  (See *People v. Superior Court (Williams)* (1992) 8 Cal.App.4th 688, 702–703.)

1. ***The Test Developed in* Miles*,* Townsend*, and* Batterton *Applies Here.***

The Supreme Court first addressed the conflict between remedies available under general maritime law and federal maritime statutes in *Miles*, *supra*, 498 U.S. 19.  There, a seaman was killed by a fellow crew member while aboard a ship.  (*Id.* at pp. 21–22.)  The decedent's mother sued the ship's owner, alleging negligence under the Jones Act for failure to prevent

5

the assault and "unseaworthiness" under general maritime law for hiring a crew member unfit to serve. (*Ibid.*) The latter claim is one of strict liability and arises from a shipowner's duty to provide a "seaworthy" ship. (*Id.* at p. 25.) One of the questions the Court considered was whether the plaintiff could recover for loss of society and punitive damages based on her general maritime law claim for unseaworthiness, even though non-pecuniary damages are precluded under the Jones Act. (*Miles*, at pp. 21–22, 32.)

The Supreme Court concluded the plaintiff could not recover such damages, reasoning that it would be "inconsistent with our place in the constitutional scheme" to award greater damages "in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." (*Miles*, *supra*, 498 U.S. at pp. 31–33.) In so holding, the Court relied on the principle that when Congress " 'speak[s] directly to a question, the courts are not free to "supplement" Congress' answer so thoroughly that the Act becomes meaningless.' " (*Id.* at p. 31; see also *id.* at p. 27 ["Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation"].) The Court noted that the maritime legislation was "a manifestation of congressional intent 'to achieve "uniformity in the exercise of admiralty jurisdiction." ' " (*Id.* at p. 26; see *Moragne v. States Marine Lines, Inc.* (1970) 398 U.S. 375, 401, superseded by statute on other grounds as stated in *Garris v. Norfolk Shipbuilding & Drydock Corp.* (4th Cir. 2000) 210 F.3d 209, 226, fn. 4.) Thus, the Court emphasized the need to "restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under [Death on the High Seas Act (DOHSA)], the Jones Act, or general maritime law." (*Miles*, at p. 33.)

Nearly two decades later, the Supreme Court clarified the scope of *Miles* in *Townsend, supra*, 557 U.S. 404. In *Townsend*, an injured seaman sued his employer for willful failure to provide maintenance and cure under general maritime law. A "maintenance and cure" cause of action is distinct from a negligence cause of action and arises from "the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." (*Townsend*, at pp. 407–408.) The seaman sought punitive damages. (*Ibid.*) The Court held that punitive damages are available for maintenance and cure claims under general maritime law. (*Id.* at pp. 407–408.)

In reaching this conclusion, the Court considered two factors: (1) whether the relief sought has been historically available under general maritime law; and (2) whether "Congress has enacted legislation departing from this common-law understanding." (*Townsend, supra*, 557 U.S. at pp. 407, 414–415.) For the first factor, the Court concluded that courts have long awarded punitive damages under general maritime law prior to the enactment of the Jones Act, including for maintenance and cure claims. (*Id.* at pp. 409–414.) On the second factor, the Court noted that the "Jones Act does not address maintenance and cure or its remedy." (*Id.* at pp. 420, 417.) Because the Jones Act created a statutory cause of action for negligence but did not eliminate the pre-existing common-law cause of action for maintenance and cure, the Court concluded that the Jones Act did not bar punitive damages for such claims. (*Id.* at pp. 415–416, 418.)

The Court rejected the petitioners' argument that the availability of punitive damages in the case was controlled by the Jones Act under *Miles*, *supra*, 498 U.S. 19. (*Townsend, supra*, 557 U.S. at pp. 418–419.) The Court confirmed that "[t]he reasoning of *Miles* remains sound" but explained that

7

*Miles* "grapples with the entirely different question whether general maritime law should provide a cause of action for wrongful death based on unseaworthiness. By providing a remedy for wrongful death suffered on the high seas or in territorial waters, the Jones Act and DOHSA displaced a general maritime rule that denied any recovery for wrongful death." (*Townsend*, at pp. 420, 419.) The Court in *Miles* was therefore called upon "to decide whether these new statutes supported an expansion of the relief available under pre-existing general maritime law to harmonize it with a cause of action created by statute." (*Townsend*, at p. 419.) In contrast, the case before the Court in *Townsend* involved a cause of action and remedy that were "well established before the passage of the Jones Act." (*Id.* at p. 420.)

More recently, in *Batterton*, the Supreme Court considered whether a Jones Act seaman could recover punitive damages on a claim that the seaman was injured as a result of the vessel's unseaworthiness. (*Batterton*, *supra*, 588 U.S. at pp. 361, 378.) The Court said resolution of the question was governed by *Miles* and *Townsend*. (*Batterton*, at p. 369.) It noted that *Miles* established that courts " 'should look primarily to . . . legislative enactments for policy guidance,' while recognizing that [courts] 'may supplement these statutory remedies where doing so would achieve the uniform vindication' of the policies served by the relevant statutes." (*Batterton*, at p. 369.) And in *Townsend*, the Court "justified [its] departure from the statutory remedial scheme based on the established history of awarding punitive damages for certain maritime torts, including maintenance and cure." (*Batterton*, at p. 369.) Accordingly, the Court in *Batterton* considered (1) "whether punitive damages have traditionally been awarded for claims of unseaworthiness" and (2) "whether conformity with parallel statutory schemes would require such damages" to maintain

8

uniformity.  (*Ibid.*)  The Court also considered whether it was "compelled on policy grounds to allow punitive damages for unseaworthiness claims." (*Ibid.*)

After considering these factors, the Court concluded the plaintiff could not recover punitive damages on a claim of unseaworthiness.  (*Batterton*, *supra*, 588 U.S. at p. 377.)  First, the Court concluded "unseaworthiness did not traditionally allow recovery of punitive damages" because the plaintiff "present[ed] no decisions from the formative years of the personal injury unseaworthiness claim in which exemplary damages were awarded."  (*Id.* at p. 372.)  Next, the Court concluded that allowing plaintiffs to recover punitive damages for unseaworthiness claims was not "required to maintain uniformity with Congress's clearly expressed policies."  (*Id.* at pp. 372–374.)  Finally, the Court rejected the plaintiff's argument that punitive damages were justified on policy grounds.  (*Id.* at pp. 374–377.)  Its reasoning was based in part on the fact that while personal injury unseaworthiness claims existed prior to the passage of the Jones Act, "unseaworthiness in its current strict-liability form is our own invention and came after passage of the Jones Act," and as such "it would exceed [the Court's] current role to introduce novel remedies contradictory to those Congress has provided in similar areas."  (*Id.* at pp. 374, 362–366.)

In sum, *Batterton* essentially reaffirmed the two-step framework established in *Townsend* to determine whether the relief requested is available under general maritime law and added a third step based on whether "policy grounds" nevertheless compel the requested relief. (*Batterton*, *supra*, 588 U.S. at pp. 361, 369.)  The Court further clarified that the analysis is "based on the particular claims involved."  (*Id.* at p. 361; see *id.* at p. 369 [noting "the importance of viewing each claim in its proper

9

historical context"].) Indeed, the Court concluded that some of the cases relied on by the plaintiff did not support his position that punitive damages were traditionally available because those cases involved maintenance and cure claims, whereas the plaintiff had brought a claim for personal injury unseaworthiness. (*Id.* at p. 371.)

Neither party devotes much attention to *Batterton* in their briefing, even though this case, like the *Batterton* case, raises the question of whether the relief requested is available under general maritime law for a personal injury unseaworthiness claim brought by a Jones Act seaman. Lynette argues *Batterton* is not "directly on point" because it "did not follow the straightforward rule . . . mapped out in *Townsend*" and rested on policy grounds that "shed no light on the consortium issue." As a result, she contends, we must " 'make an independent determination' " of the question raised on appeal. She asserts that a pre-*Miles* decision, *American Export Lines, Inc. v. Alvez* (1980) 446 U.S. 274 (*Alvez*), and the canon of admiralty law it relied on control this determination.[3]

---

[3] Lynette also cites cases that she claims have "started marking out *Batterton's* limits," but those cases are distinguishable. (See, e.g., *Ranger v. Alamitos Bay Yacht Club* (2025) 17 Cal.5th 532, 542 [concluding *Batterton* was inapplicable where the question raised on appeal concerned the *causes of action* that could be asserted by the plaintiff, rather than the available remedies]; *Evans v. John Crane, Inc.* (D.Del. Oct. 24, 2019, C.A. No. 15-681 (MN)) 2019 U.S.Dist. Lexis 184048, at *12 & fn. 6 [distinguishing *Batterton* in a case concerning the application of DOHSA to "indivisible injuries"]; *Kirk v. Superior Marine Ways, Inc.* (S.D.W.Va. Feb. 25, 2025, Civ. A. No. 3:23-0728) 2025 U.S.Dist. Lexis 33678, at *13 [distinguishing *Batterton* on ground that it involved a seaman, not a longshoreman].) Moreover, we are not bound by the decisions of the lower federal courts. (*People v. Bradley* (1969) 1 Cal.3d 80, 86.)

10

We are unpersuaded that the *Batterton* test does not control here. First, on questions of federal law, we are bound by the " 'ratio decidendi' " of United States Supreme Court decisions. (*People v. Superior Court (Williams), supra*, 8 Cal.App.4th at pp. 702–703.) " 'The ratio decidendi is the principle or rule which constitutes the ground of the decision, and it is this principle or rule which has the effect of a precedent.' " (*Santa Monica Hospital Medical Center v. Superior Court* (1988) 203 Cal.App.3d 1026, 1033, italics omitted.) It includes "a judicial decision's reasoning," which "allows [the decision] to have life and effect in the disposition of future cases" (*Ramos v. Louisiana* (2020) 590 U.S. 83, 104), and statements "necessary to the decision" (*Western Landscape Construction v. Bank of America* (1997) 58 Cal.App.4th 57, 61), but not dictum (*United Steelworkers of America v. Board of Education* (1984) 162 Cal.App.3d 823, 834, superseded by statute on other grounds as stated in *California School Employees Assn. v. Bonita Unified School Dist.* (2008) 163 Cal.App.4th 387, 401).

The factors the *Batterton* Court considered and the standards it applied in determining whether the requested relief was available under general maritime law were necessary to the decision (*Batterton, supra*, 588 U.S. at pp. 361, 369, 377), and thus they constitute binding precedent. (*Western Landscape Construction v. Bank of America, supra*, 58 Cal.App.4th at p. 61; see *Sands v. Morongo Unified School Dist.* (1991) 53 Cal.3d 863, 872 [California Supreme Court concluded it must follow the "*Lemon* test" developed by the United States Supreme Court for "establishment clause cases"]; *General Motors Corp. v. City of Los Angeles* (1995) 35 Cal.App.4th 1736, 1741 ["[t]he city's tax scheme also fails the 'internal consistency test' explained in [United States Supreme Court cases], all of which are binding on this court"].) Contrary to Lynette's contention, *Batterton*'s holding did not

11

rest solely on policy grounds and was instead based on all three factors discussed above. (See *Batterton*, at pp. 372, 377.) We see no reason why the *Batterton* test would be inapplicable here, as it is designed to determine the remedies available under general maritime law and is derived from *Townsend* and *Miles*, the latter of which concerned a different remedy than that at issue in *Batterton*. (*Batterton*, at pp. 361, 369; *Miles*, *supra*, 498 U.S. at pp. 32–33.)

Even if the relevant language in *Batterton* is dictum, "it is a compelling policy of the Supreme Court which should not be ignored." (*Youngblood v. Gates* (1988) 200 Cal.App.3d 1302, 1313; *see Sierra Club v. Environmental Protection Agency* (D.D.C. 2003) 322 F.3d 718, 724 [" 'carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative' ", italics omitted]; *Nettles v. Grounds* (9th Cir. 2016) 830 F.3d 922, 938 (conc. opn. of Hurwitz, J.) ["carefully considered" Supreme Court dicta "should be followed absent compelling reasons to the contrary"], disagreed with on other grounds in *Camacho Lopez v. Lowe* (M.D.Pa. 2020) 452 F.Supp.3d 150, 159.)

Second, *Miles* and *Batterton* reflect a shift away from the principles relied on by *Alvez*. The Court in *Alvez* held that the wife of a harbor worker (*not* a Jones Act seaman) could recover damages for the loss of her husband's society.[4] (*Alvez*, *supra*, 446 U.S. at p. 276.) In so holding, the Court relied on *Sea-Land Services, Inc. v. Gaudet* (1974) 414 U.S. 573, which held that the

---

[4] Although *Alvez* characterizes the husband as a "harbor worker" (*Alvez, supra*, 446 U.S. at p. 276), Lynette claims the husband in *Alvez* was actually a " '*Sieracki* seaman.' " She argues that California law treats *Sieracki* seamen and Jones Act seamen the same "in all material respects." For the reasons explained below, we do not find *Alvez* controlling here regardless.

widow of a longshoreman could recover for loss of consortium in a maritime wrongful death action. (*Alvez*, at p. 281.) The *Alvez* Court also relied on the canon of admiralty law that " ' "it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." ' " (*Id.* at pp. 281–282.) *Batterton* subsequently made clear, however, that courts, when exercising their common-law authority, must give "deference to the policies expressed in the statutes governing maritime law." (*Batterton*, *supra*, 588 U.S. at p. 377; see *id.* at p. 361 ["[w]hen exercising its inherent common-law authority, 'an admiralty court should look primarily to these legislative enactments for policy guidance' "].) Thus, the *Batterton* test "is indicative of a major shift in the Supreme Court's approach to developing general maritime law" from courts " 'us[ing] [their] power to protect seamen from injury' " to "courts now giv[ing] 'deference to the policies expressed in the statutes governing maritime law.' " (*Mullinex v. John Crane Inc.* (E.D.Va. 2022) 606 F.Supp. 3d 289, 293.)[5] *Miles* also reflects this shift in the

[5] At oral argument, counsel for Lynette contended that the conclusion reached by some lower federal courts, including *Mullinex*, that *Miles* and *Batterton* reflect a "major shift" in maritime jurisprudence was erroneous. Counsel further argued that these courts "misused" the uniformity principle cited in *Miles* and *Batterton* and wrongly concluded as a result that they had no power to provide remedies more favorable than those codified by Congress. According to counsel, the uniformity doctrine does not require Congress and the courts "to speak in one voice" but rather refers to federal preemption of contradictory state maritime law. However, neither *Batterton* nor *Miles* indicated that the uniformity principle they relied on in reaching their holdings concerned federal preemption of state law. Rather, the second *Townsend/Batterton* factor considers whether the requested relief is required to "promote a 'uniform rule applicable to all actions' *for the same injury*, whether under the Jones Act or the general maritime law." (*Batterton supra*, 588 U.S. at p. 374, quoting *Miles*, *supra*, 498 U.S. at p. 33, italics added; see

development of general maritime law, as it limited the applicability of *Gaudet* to its facts, noting that "*Gaudet* did not consider the preclusive effect of the Jones Act for deaths of true seamen." (*Miles*, *supra*, 498 U.S. at pp. 31–32; see *id.* at p. 31 ["The holding of *Gaudet* applies only in territorial waters, and it applies only to longshoremen."].)

Accordingly, we will apply the *Townsend/Batterton* factors to determine whether Lynette may recover for loss of consortium under general maritime law. Before doing so, we will briefly address Lynette's suggestion that non-pecuniary damages are available under the Jones Act for a "nonfatal injury."

### 2. *Loss of Consortium Is Not Available Under the Jones Act.*

Although Lynette spends the majority of her briefing discussing the availability of loss of consortium under general maritime law, at one point in her opening brief she contends the trial court ignored her argument that "the Jones Act has always guaranteed nonpecuniary compensation for . . . those who suffer non-fatal injuries." She distinguishes *Miles* on the ground that it involved a wrongful death claim. To the extent Lynette is suggesting loss of consortium is available under the Jones Act itself, we disagree.

At the time *Miles* was decided, the Jones Act stated that a seaman or their personal representative may bring an "action for damages" for personal injury or wrongful death where the seaman was injured in the course of his employment. (Former 46 U.S.C.A. § 688(a).) Although "the Jones Act [did] not explicitly limit damages to any particular form," the Court in *Miles*

---

*Miles*, at p. 33 ["[t]oday we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law"].) Moreover, *Mullinex* merely reflects *Batterton*'s conclusion that "the special solicitude" courts traditionally gave seamen "has only a small role to play in contemporary maritime law." (*Batterton*, at p. 377; see *Mullinex v. John Crane Inc.*, *supra*, 606 F.Supp. 3d at p. 293.)

14

concluded the Jones Act "makes applicable to seamen the substantive recovery provisions of the older [Federal Employers' Liability Act (FELA)]." (*Miles*, *supra*, 498 U.S. at p. 32.) In concluding that "[t]here is no recovery for loss of society in a Jones Act wrongful death action," the Court noted that "the language of the FELA wrongful death provision is essentially identical to that of Lord Campbell's Act," which was interpreted as providing recovery only for pecuniary loss. (*Ibid.*) "Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well." (*Ibid.*)

While *Miles* focused on the wrongful death provisions in FELA and the Jones Act, *Batterton*, which involved non-fatal injuries, similarly concluded that the "Jones Act adopts the remedial provisions of FELA." (*Batterton*, *supra*, 588 U.S. at p. 372.) It did so when considering the second *Townsend/Batterton* factor after having concluded that punitive damages were not historically available for personal injury unseaworthiness claims. (*Id.* at pp. 372–374.) The Court cited federal Supreme Court cases that it characterized as holding that the damages available under FELA were limited to pecuniary loss resulting from "the worker's injury *or* death." (*Batterton*, at p. 372, italics added.) The Court then noted that the lower federal courts "have uniformly held that punitive damages are not available under the Jones Act" based on FELA. (*Batterton*, at p. 373.) It declined the plaintiff's request to reconsider those cases, "because of the absence of historical evidence to support punitive damages." (*Ibid.*) "It is enough for us to note the general consensus that exists in the lower courts and to observe that the position of those courts conforms with the discussion and holding in *Miles*" and "promote a 'uniform rule applicable to all actions' for the same injury, whether under the Jones Act or the general maritime law." (*Id.* at pp.

15

373–374.)  Thus, *Batterton* indicates not only that the relief available under the Jones Act is limited to pecuniary losses regardless of whether the injuries suffered by the seaman were fatal, but also that the consensus of the lower courts regarding the relief available under the Jones Act controls where the requested relief was not traditionally available under general maritime law.

Consistent with *Batterton*, federal courts have consistently held that the limitations on damages for Jones Act wrongful death claims extend to Jones Act claims for non-fatal injuries.  (See *Kopczynski v. The Jacqueline* (9th Cir. 1984) 742 F.2d 555, 560; *Michel v. Total Transp.* (5th Cir. 1992) 957 F.2d 186, 191; *McBride v. Estis Well Service, L.L.C.* (5th Cir. 2014) 768 F.3d 382, 388 ["[e]ven though *Miles* was a wrongful death action, no one has suggested why its holding and reasoning would not apply to an injury case"]; *Horsley v. Mobil Oil Corp.* (1st Cir. 1994) 15 F.3d 200, 202–203 [concluding damages for loss of society was unavailable under the Jones Act for non-fatal injuries based in part on federal cases indicating that loss of society was unavailable under FELA], disagreed with on other grounds in *In re Osage Marine Servs.* (E.D.Mo. Mar. 5, 2012, No. 4:10-CV-1674 (CEJ)) 2012 U.S.Dist. Lexis 28433, at *5–7; *In re Plaquemine Towing Corp.* (M.D.La. 2002) 190 F.Supp.2d 889, 891; *In re J.A.R. Barge Lines, L.P.* (W.D.Pa. 2004) 307 F.Supp.2d 668, 671 ["when a wrongful death or personal injury claim is brought under the Jones Act, there can be no recovery for nonpecuniary losses"].)  Lynette offers no authority to the contrary.[6]

---

[6] In the sole case on which Lynette relies in her appellate briefing, *Boyle v. Pool Offshore Co., Div. of Enserch Corp.* (5th Cir. 1990) 893 F.2d 713, 718–719, none of the issues raised on appeal concerned the availability of non-pecuniary damages under the Jones Act.  (*Boyle*, at pp. 717–720.)  "It is . . . axiomatic that cases do not stand for propositions not presented or decided."  (*People v. Annin* (2004) 117 Cal.App.4th 591, 606.)  At oral

16

In any event, the plain language of the Jones Act precludes loss of consortium claims for non-fatal injuries. (See *Leslie H. v. Superior Court* (2014) 224 Cal.App.4th 340, 347–348 [" ' " 'plain language' " ' " of federal statute controls its meaning].) The Jones Act states, "A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law . . . against the employer." (46 U.S.C.A. § 30104(a).) Thus, where, as here, the seaman suffers non-fatal injuries, the Jones Act does not authorize anyone other than the injured seaman to bring a civil action. (See *Turner v. Victoria* (2023) 15 Cal.5th 99, 114 [concluding the phrase " 'bring an action' " refers to " 'the initiation of legal proceedings in a suit' "].) This necessarily excludes loss of consortium claims, which can only be brought by the spouse of the injured party. (*LeFiell Manufacturing Co. v. Superior Court* (2012) 55 Cal.4th 275, 284; see *Igneri v. Cie. de Transports Oceaniques* (2d Cir. 1963) 323 F.2d 257, 266 [concluding the Jones Act does not authorize recovery by the seaman's wife for loss of consortium because the statute "authorizes only the seaman himself (not his wife) to 'maintain an action for damages at law' "], overruled on other grounds in *Alvez, supra*, 446 U.S. at p. 276.)

---

argument, counsel for Lynette claimed there was a "split in authority" on this issue but cited only *Barrette v. Jubilee Fisheries, Inc.* (W.D.Wash. Aug. 11, 2011, Case No. C10-01206 MJP) 2011 U.S.Dist. Lexis 89514. Contrary to counsel's assertion, *Barrette* held that loss of consortium was available under general maritime but *not* under the Jones Act. (*Id.* at *3, 18.)

### 3. *Loss of Consortium Is Not Available Under General Maritime Law for Personal Injury Unseaworthiness Claims.*

Having concluded the Jones Act does not provide for loss of consortium for non-fatal injuries, we turn to the *Townsend*/*Batterton* factors to determine whether loss of consortium is available under general maritime law. Since the analysis depends on "the particular claims involved" (*Batterton*, *supra*, 588 U.S. at p. 361), we begin by noting that on appeal Lynette focuses on the cause of action for unseaworthiness. Our de novo review is limited to the issues that have been adequately raised in Lynette's brief. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) As such, the questions we decide are whether loss of consortium has been historically available under general maritime law for personal injury unseaworthiness claims and whether the remedy "is required to maintain uniformity with Congress's clearly expressed policies." (*Batterton*, at p. 372.)

In arguing that her loss of consortium satisfies " '*Townsend*'s first step,' " Lynette relies on *Morgan v. Almars Outboards, Inc.* (D.Del. 2018) 316 F.Supp. 3d 828 (*Morgan*), in which a federal district court concluded that "loss of consortium has been available to maritime plaintiffs since well before [] the Jones Act itself." (*Id.* at p. 841.) But none of the cases *Morgan* cited as support for this conclusion establishes that loss of consortium was "traditionally available *for breach of the duty of seaworthiness.*" (*Batterton*, *supra*, 588 U.S. at p. 370, italics added; see *Morgan*, at p. 841.)

*Cutting v. Seabury* (D.Mass. 1860) 6 F.Cas. 1083 involved the death of a minor on a whaling voyage. (*Id.* at p. 1084.) The minor's father sued the minor's employer for loss of "the 'services, comfort and society' of his child." (*Ibid.*) The opinion does not indicate that the father's claim was based on the unseaworthiness of the vessel; rather, it appears his cause of action was

18

based on the defendants knowingly hiring a minor.  (See *id.* at p. 1085 ["[k]nowledge of the minority seems to be essential to the maintenance of such an action"].)

In *New York & Long Branch Steamboat Co. v. Johnson* (3d Cir. 1912) 195 F.740, a passenger on a steamboat sued the charterers of the steamboat after she was injured in a collision between the steamboat and another vessel.  (*Id.* at p. 740.)  Her husband asserted a claim for loss of consortium.  (*Ibid.*)  The jury found in favor of the plaintiffs, and the Third Circuit affirmed.  (*Id.* at pp. 740, 742.)  However, the wife's cause of action was for negligence, not unseaworthiness.  (*Id.* at p. 740.)

*Morgan* also relied on *Sea-Land Services, Inc. v. Gaudet, supra,* 414 U.S. 573 and *Alvez, supra,* 446 U.S. 274, which were decided in 1974 and 1980, respectively.  (*Morgan, supra,* 316 F.Supp. 3d. at p. 841.)  As previously mentioned, *Gaudet* held that the decedent's wife could recover for loss of consortium in a maritime wrongful death action.  While the case was an action for unseaworthiness, the husband was a longshoreman, not a Jones Act seaman.  (*Gaudet,* at pp. 574–575.)  Approximately six years later, the *Alvez* Court relied on *Gaudet* in holding that an injured harbor worker's wife could recover loss of society under general maritime law, reasoning that there was "no apparent reason to differentiate between fatal and nonfatal injuries in authorizing the recovery of damages for loss of society."  (*Alvez,* at pp. 275–276, 281.)

Despite its holding, *Alvez* noted that as of 1963, "there was no clear decisional authority sustaining a general maritime law right of recovery for loss of society."  (*Alvez, supra,* 446 U.S. at p. 280; see *ibid.* ["it was far from evident that the rule . . . entitling a longshoreman to maintain an action for unseaworthiness, would extend to permit recovery for loss of society by his

spouse"]; *Igneri v. Cie. de Transports Oceaniques, supra,* 323 F.2d at pp. 265–266 [noting in 1963 that there were no maritime cases pertaining to recovery for loss of consortium aside from two district court decisions denying such recovery]; *Doyle v. Graske* (8th Cir. 2009) 579 F.3d 898, 906 ["[l]oss-of-consortium damages were not definitively recognized under general maritime law in any context until [*Gaudet*]"].)

*Alvez* and *Gaudet* themselves do not provide the requisite historical evidence. First, *Miles* limited *Gaudet*'s applicability to its facts. (See *Miles, supra,* 498 U.S. at pp. 31–32 ["The holding of *Gaudet* applies only in territorial waters, and it applies only to longshoremen."].) Moreover, *Alvez* and *Gaudet* are not decisions "from the formative years" of personal injury unseaworthiness claims. (See *Batterton, supra,* 588 U.S. at p. 372 [finding no tradition of allowing punitive damages because the plaintiff presented "no decisions from the formative years of the personal injury unseaworthiness claim in which exemplary damages were awarded"]; *id.* at pp. 363–367 [explaining the evolution of unseaworthiness claims in the late 19th and early 20th centuries "toward remedying personal injury"].)

Finally, *Morgan* cited a relatively recent case in which a federal district court concluded that loss of consortium claims were cognizable prior to the enactment of the Jones Act. (*Morgan, supra,* 316 F.Supp. 3d at p. 841, citing *Barrette v. Jubilee Fisheries, Inc., supra,* 2011 U.S.Dist. Lexis 89514.) We do not find *Barrette* persuasive, as the cases it relied on do not constitute "a clear historical pattern" of awarding loss of consortium for personal injury unseaworthiness claims. (*Batterton, supra,* 588 U.S. at p. 370, fn. 6.) In addition to *Cutting, New York & Long Branch Steamboat Co.,* and *Gaudet, Barrette* relied on *The E.B. Ward Jr.* (E.D.La. 1885) 23 F. 900 and *The Schooner Robert Lewers Co. v. Kekauoha* (9th Cir. 1902) 114 F. 849.

20

(*Barrette v. Jubilee Fisheries, Inc.*, at \*17.)  *The E.B. Ward, Jr.*, however, was a negligence action, not an unseaworthiness action.  (*The E.B. Ward, Jr.*, at pp. 901–902.)  And in *The Schooner Robert Lewers Co.*, it does not appear the court relied on general maritime law in concluding the wife of the decedent was entitled to damages for the death of her husband.  (*The Schooner Robert Lewers Co.*, at pp. 850–854; see *In re Air Crash Off Long Island, New York, on July 17, 1996* (2d Cir. 2000) 209 F.3d 200, 222, fn. 10 [noting that "general maritime law was irrelevant to the outcome" in *The Schooner Robert Lewers Co.*], disagreed with on other grounds in *Helman v. Alcoa Global Fasteners, Inc.* (9th Cir. 2011) 637 F.3d 986, 992.)  Regardless, one case is not enough to establish the requisite historical record.  (See *Batterton*, at p. 370, fn. 6.)

Citing *Townsend* and *Alvez*, Lynette contends the District had the burden to identify cases establishing that loss of consortium damages were historically unavailable for unseaworthiness claims.  Lynette takes the cited portions of *Townsend* and *Alvez* out of context.  In reaching its holding, the Court in *Alvez* did not " 'look primarily to the[] legislative enactments for policy guidance' " or consider whether the requested relief had been traditionally available for the claim asserted.  (*Batterton*, *supra*, 588 U.S. at pp. 361 369; see *id.* at p. 370, fn. 6; *Alvez*, *supra*, 446 U.S. at pp. 281–282.)  Thus, *Alvez* did not decide which party had the burden on the first *Townsend/Batterton* factor.  While the *Townsend* Court noted the defendants did not "identify any cases establishing that such damages were historically unavailable for breach of the duty of maintenance and cure," it did so only after discussing cases that indicated maintenance and cure cases traditionally allowed for recovery of the requested relief.  (*Townsend*, *supra*, 557 U.S. at pp. 413–414, 418.)  Given this context, the Court in *Townsend*

21

was not suggesting the defendants had the *initial* burden to establish that the requested relief was historically unavailable for certain claims.

In any event, the Supreme Court in *Batterton* effectively placed the burden on the plaintiff to produce historical evidence that punitive damages were allowed in unseaworthiness actions. (*Batterton, supra,* 588 U.S. at p. 372 [concluding "unseaworthiness did not traditionally allow recovery of punitive damages" because the plaintiff "present[ed] no decisions from the formative years of the personal injury unseaworthiness claim in which exemplary damages were awarded"]; see also *Spurlin v. Air & Liquid Systems Corporation* (S.D.Cal. 2021) 537 F.Supp. 3d 1162, 1180 ["the relevant question before the Court is whether Plaintiffs have presented historical evidence that non-pecuniary losses . . . have been traditionally recoverable under a general maritime law negligence action"]; *Payne v. General Electric Company* (E.D.Cal. Sept. 26, 2025, No. 2:20-cv-01198-TLN-AC) 2025 U.S.Dist. Lexis 190500, at *27 ["[a]bsent a showing from Plaintiffs that a clear historical pattern exists, the Court finds [the defendant] is entitled to summary judgment on the loss of consortium claim"].)

Accordingly, the lack of evidence before us establishing that loss of consortium was traditionally available in personal injury unseaworthiness claims is "practically dispositive." (*Batterton, supra,* 588 U.S. at p. 371; see *Elorreaga v. Rockwell Automation, Inc.* (N.D.Cal. July 7, 2022, Case No. 21-cv-05696-HSG) 2022 U.S.Dist. Lexis 121911, at *13–14 [noting circuit courts consistently do not find loss of consortium damages to be available under general maritime law].)

Further, because the Jones Act bars recovery for loss of consortium, conformity with the federal statutory scheme counsels against the availability of such damages here. (See *Batterton, supra,* 588 U.S. at p. 359

22

[noting that because punitive damages are not available under the Jones Act, allowing punitive damages for unseaworthiness claims "would be contrary to *Miles*'s command that federal courts should seek to promote a 'uniform rule applicable to all actions' for the same injury, whether under the Jones Act or the general maritime law"]; see *id.* at p. 374 ["a claim of unseaworthiness . . . serves as a duplicate and substitute for a Jones Act claim"].)

Lastly, Lynette offers no policy grounds that weigh in favor of allowing her to recover for loss of consortium. (See *Batterton, supra*, 588 U.S. at p. 374 [considering and rejecting the plaintiff's argument that punitive damages were justified on "policy grounds"].) As the *Batterton* Court held, "our overriding objective is to pursue the policy expressed in congressional enactments, and because unseaworthiness in its current strict-liability form is our own invention and came after passage of the Jones Act, it would exceed our current role to introduce novel remedies contradictory to those Congress has provided in similar areas." (*Ibid.*)

There being no evidence that loss of consortium was historically available in personal injury unseaworthiness actions, coupled with the observation that a parallel statutory scheme does not allow for recovery of loss of consortium, we conclude loss of consortium is unavailable in this case. Therefore, the trial court did not err in sustaining the District's demurrer to Lynette's loss of consortium claim.[7]

---

[7] In light of this conclusion, we need not and do not address Lynette's argument that the trial court's reliance on *Prickett v. Bonnier Corporation* (2020) 55 Cal.App.5th 891 was misplaced. "[B]ecause we are reviewing the trial court's ruling and not its reasoning, we may affirm on any ground supported by the record regardless of whether the trial court relied upon it." (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960.)

## III.    DISPOSITION

The order sustaining the District's demurrer to the loss of consortium claim is affirmed.

_____
LANGHORNE WILSON, J.

WE CONCUR:

_____
BANKE, Acting P.J.

_____
SMILEY, J.

*Simerley et al. v. Golden Gate Bridge Highway & Transportation District*/ A173588

## A173588/ Simerley et al. v. Golden Gate Bridge Highway & Transportation District

Trial Court:       Superior Court for the County of San Francisco, No. CGC25622935

Trial Judge:       Hon. Christine Van Aken

Counsel:       McGuinn, Hillsman & Palefsky, John Ralph Hillsman for Plaintiff and Appellant.

Peacock Piper Tong + Voss LLP, Glen Richard Piper, Juliette Bowen McCullough, and Albert Edward Peacock III for Defendant and Respondent.